# Robinson *v.* The State.

## *Murder.*

(Decided Feb. 5, 1908.   45 South. 916.)

1. *Homicide; Evidence; Relative Physical Condition.*—In. the absence of evidence showing self defense evidence of the relative physical condition of defendant and deceased is immaterial and inadmissible.

2. *Same; Previous Difficulty.*—Although the state had shown a previous difficulty between deceased and defendant, it was not permissible for defendant to prove particulars thereof.

3. *Witnesses; Impeachment; Interest in Case.*—In the absence of an offer to show that a witness had in fact contributed to a fund to employ counsel to prosecute, the fact that he was asked to contribute was immaterial.

4. *Homicide; Self Defense.*—The doctrine of self defense cannot be invoked to justify a killing unless defendant was entirely free from fault in bringing on the difficulty which resulted in the killing.

5. *Same.*—Where it appeared from the testimony of defendant that on the day prior to the difficulty he had a difficulty with deceased, and that deceased made threats against him which were communicated to him; and that on the day of the killing, on seeing deceased, defendant approached within four or five feet of him and said, "let's settle this trouble," and immediately the deceased began to draw his pistol, but defendant drew his first and fired the fatal shot, the defendant could not invoke the doctrine of self defense.

6. *Same.*—Although a man has a right to go to another in a peaceful manner for the purpose of adjusting a difficulty, and his doing so and simply referring to the previous difficulty, is not of itself sufficient to deprive him of the right of self defense, yet he has no right to arm himself and go to the other under the guise of

explaining the difficulty and under that guise provoke the other and then take advantage of that fact to slay him.

7. *Same; Burden of Proof.*—One defending on the ground of self defense has the burden of proof as to self defense and an instruction asserting that if the jury have a reasonable doubt as to whether defendant acted in self defense or not, they should acquit him; and that the burden was not on accused to establish such defense by a preponderance of evidence, does not state the law.

8. *Criminal Law; Instructions Argumentative.*—A charge asserting that the jury should not convict defendant unless they believe that he was guilty beyond a reasonable doubt, and that they should not consider the fact that other juries had shirked their duty, was argumentative and its refusal proper.

9. *Homicide; Self Defense; Elements.*—In order to invoke the doctrine of self defense the defendant must be free from all fault—must not say or do anything to provok a difficulty; there must be a present, impending peril to life, or danger of great bodily harm, either real or so apparent as to create in the mind of a reasonable man a bona fide belief of the existing necessity, and there is no convenient or reasonable mode of escape by retreat or by declining the combat.

10. *Criminal Law; Argument of Counsel.*—The prosecuting attorney may read to the jury extracts of opinions from the Supreme Court defining the degrees of homiciae and announcing the rule that a felonious homicide, willful and deliberate murder may be committed during a mutual recounter. Such being an argument ·based on a hypothetical case, and not a statement of a fact, and hence, within the scope of legitimate argument.

APPEAL from Jefferson Criminal Court.

Heard before Hon. DAN A. GREENE.

H. S. Robinson was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The court in his oral charge said to the jury.: No matter what a man's peril may be, gentlemen of the jury, and how unable he may have been to retreat from that peril, if he voluntarily placed himself in the condition that brought about that peril, either by word or action of his, he cannot justify it. He would be guilty of some degree of unlawful homicide. That does not mean, gentlemen, that a man shall not approach another in a peaceful and quiet manner for the purpose of adjusting a difficulty, if he had no thought or purpose or intention of provoking a difficulty. A man has the right to go to

another in a peaceful manner for the purpose of adjusting the difficulty, and that of itself, the mere reference to another difficulty, does not deprive him of self-defense. You are the judges of that, and you alone. He has no right to arm himself and go to another under the guise of explaining a previous difficulty, and under that guise provoke another man, and then take advantage of that and slay him. At the same time, he would not be at fault if in a peaceful manner, and without any purpose to provoke another, he approaches him. If, then, the other commits an assault, or attemps to do so, he would still have the right of self-defense. And the question as to whether or not he was at fault is for you to decide under the evidence in this case."

At the request of the state the following written charges were given : (1) I charge you, gentlemen of the jury, that, if the defendant was not free from all fault in bringing on the fatal difficulty, he cannot be acquitted on the plea of self-defense. (2) If you believe from the evidence beyond all reasonable doubt that the defendant entered into the fatal difficulty willingly, he cannot invoke the doctrine of self-defense. (3) The essential elements of self-defense are, first, that the defendant must be free from fault himself, he must not say or do anything for the purpose of provoking a difficulty, nor be disregardful of the consequences in this respect of any wrongful word or act; Second, there must be a present, impending peril to life, or danger of great bodily harm, either real or so apparent as to create the bona fide belief of an existing necessity; Third, there must be no convenient or reasonable mode of escape by retreat or by declining the combat. (4) If the jury believe from the evidence in this case beyond a reasonable doubt that the defendant approached the deceased at the time of the fatal difficulty, and by his conduct or word provoked or

commenced the fatal difficulty, he cannot invoke the doctrine of self-defense. (5) If the jury believe from the evidence beyond a reasonable doubt that the defendant by his acts or words on the occasion of his fatal difficulty intended to provoke the deceased to make a demonstration against him, intending then to kill him, it would be murder, and you should so find your verdict. (6) If the jury believe from the evidence in this case beyond a reasonable doubt that the defendant spoke to the deceased about a previous difficulty, intending to bring on a fight or conflict, he cannot be acquitted under the law."

The defendant requested the following charges in writing, which were refused:

"(1) If the jury have a reasonable doubt, generated by all the evidence in this case, as to whether the defendant acted in self-defense or not, they should acquit him. (2) The burden is not on the defendant to establish self-defense by a preponderance of the evidence; but, if all the evidence raises in the minds of the jury a reasonable doubt as to whether or not the defendant acted in self-defense, they must find him not guilty. (3) If the jury believe that juries heretofore have shirked their duty, yet, on account of that, you should not convict the defendant, unless you believe that he is guilty beyond a reasonable doubt."

The bill of exceptions then states that the attorney for the prosecution, over the objection and exception of the defendant, read to the jury the following extract from page 28 of volume 60 of the Alabama Reports (Mitchell v. State), beginning with the expression, "This grade of crime," and ending, "It is in its lax and falsely merciful administration," and also read to the jury, over the objection and exception of the defendant the following extract from the opinion in the case of

Ex parte Nettles, 58 Ala. 268, beginning with the expression, "We cannot too strongly express," and ending with the expression, "If not intensified."

BOWMAN, HARSH & BEDDOW, for appellant. The court improperly excluded the evidence tending to show the physical characteristics of the parties.—*Wilkins v. The State*, 98 Ala. 1; *Gunter v. The State*, 111 Ala. 23; *B. R. L. & P. Co. v. Mullen*, 138 Ala. 622; 6 Ency of Evid. p. 767. The court erred in sustaining the state's objection to the defendant's question on cross examination of the witness Schoener —*Russell v. The State*, 11 Tex. App. 388; *State v. Foster*, 49 S. W. 747; *Gunter v. The State, supra.*. Counsel discuss the charges given for the state and refused to the defendant, but without citation of authority.

ALEXANDER M. GARBER, Attorney-General, for the State. The physical condition of the plaintiff is not proper testimony.—*King v. The State*, 90 Ala. 612; *Gregory v. The State*, 140 Ala. 16. The previous difficulty was not admissible.—*Gordon v. The State*, 140 Ala. 29. The fact that the witness had been called upon to contribute to a fund was immaterial.—*Carpenter v. The State*, 98 Ala. 32; *Williams v. The State*, 140 Ala. 10. The court did not abuse its discretion in permitting Weir to testify.—*Burke v. The State*, 120 Ala. 386. It was not proper for the defendant to testify whether he was angry.—*Fonville v. The State*, 91 Ala. 39. The defendant could not testify that he was personally afraid. —*Lewis v. The State*, 96 Ala. 6; *Hill v. The State*, 137 Ala. 66; *White v. The State*, 103 Ala. 72. Charges 1, 2, 3, 4, 5 and 6 given for the state were proper.—*Reese v. The State*, 135 Ala. 13; *Skipper v. The State*, 144 Ala. 100; *Gilmore v. The State*, 126 Ala. 20. Charges 1 and

2 refused to the defendant were properly refused.—
*Mann v. The State,* 134 Ala. 1. Charge 3 was intend
as an answer to argument of counsel.

DOWDELL, J.—The appellant was indicted and
tried on the charge of murder, was found guilty of man-
slaughter in the first degree, and was sentenced to a
term of five years' imprisonment in the penitentiary.
From the judgment of conviction and sentence the pres-
ent appeal is prosecuted.

During the trial numerous exceptions were taken to
the rulings of the court on the admission and exclusion
of evidence. These numerous exceptions do not require
treatment and consideration in detail, since many of
them raise similar questions and may be grouped to-
gether and disposed of on general propositions. A num-
ber of exceptions were reserved to the refusal of the
court, on the objection of the state, to permit the defend-
ant on the cross-examination of the state's witnesses to
show the physical strength and size of the deceased. At
the time of these rulings no evidence had been introduc-
ed or offered tending to show self-defense. This evi-
dence, therefore, sought to be introduced by the defend-
ant upon the cross-examination of the state's witness,
was immaterial and inadmissible when objected to. The
same is true as to the physical condition of the defend-
ant. In the absence of evidence tending to show self-de-
fense, evidence of the relative sizes and physical condi-
tion of the parties is immaterial.—*Gregory v. State,* 140
Ala. 16, 37 South. 259; *King v. State,* 90 Ala. 612, 8
South. 856.

The state having shown a previous difficulty between
the defendant and the deceased, the defendant sought
to prove the particulars of said prior difficulty. This
was not admissible against objection, as has often been

ruled by this court.—*Gorden v. State,* 140 Ala. 29, 36 South. 1009, and cases there cited.

That the witness Lewis had been asked to contribute to a fund to employ counsel to prosecute in the case was wholly immaterial; it not being shown or offered to be shown that he did in fact contribute.—*Williams v. State,* 140 Ala. 10, 37 South. 228; *Carpenter v. State,* 98 Ala. 32, 13 South. 534.

A careful review and consideration of all the evidence in the case satisfies us that the plea of self-defense could be of no avail to the defendant, and this on the undisputed facts and the defendant's own testimony. The evidence is without dispute that the defendant was not free from fault in bringing on the difficulty that resulted in the killing of the deceased. While the evidence may have been, and as for that matter was, in conflict, as to who, the defendant or the deceased, made the first demonstration or effort towards drawing a pistol, the evidence is without dispute that the defendant approached the deceased, addressing him in a manner and in language well calculated, under the circumstances and in view of the former difficulty of the day before, to invoke and bring on a difficulty. The defendant himself testified to the previous difficulty of the day before between him and the deceased, and, further, that the night following the previous difficulty threats against his life made by the deceased were communicated to him. The fatal encounter occurred early the next morning. This evidence was without dispute. On his cross-examination the defendant testified, further, that he went up to where Thomson (deceased) was. Further testifying, he said: "That was the time for me to go to work. I did not know what Mr. Thompson's feelings at that time was. I suppose he was angry. He carried a pistol. I watched him when I walked up there. I watched him to see when I walked

up. I didn't look the first thing to see his pistol. I just simply walked up and looked at the man, looked at him in the face, and he didn't say anything to me, and I just thought to myself I will speak to Mr. Thompson. I knew he had said he was going to kill me, and I knew he had called me a son of a bitch. I supposed he was armed. I knew, if I approached him and he had said those things, it meant a difficulty. I did not have my hand where I could get my gun; had my hand hanging at my side. I did not get my pistol out before he could get his out. I think he got his out first. I don't know what kept him from shooting. He tried to get the pistol out first, and I think he did get it out. I just jerked my pistol and shot. I said, 'Mr Thompson, let's settle this trouble.' Just as soon as he went for his gun, I went for mine. When he threw his hand to his gun, I said, 'Don't do that!' or 'Don't pull your gun!—something like that. I pulled mine after I saw he was getting his out. As I stepped back I pulled mine out. When I said that I was in four or five feet of him. When I shot him, I was about the same distance, I suppose, He had got somewhere near the door there. I don't know just what position he was in, exactly; that is, I don't know. I didn't shoot him in the back. I don't know whether he had time to turn around after I shot the first time or not. He didn't turn around. I shot him both shots in front."

The defendant had already testified on his direct examination that the first thing that happened, when he went up to where the deceased was, was what he said to the deceased as to settlement of their difficulty. What the defendant's private or secret intentions were as to a friendly settlement can be of no consequence, since there is no pretense that the deceased had any knowledge or intimation of such intentions of the defendant. The law is well settled in this state that a defendant can-

not invoke the doctrine of self-defense unless he is entirely free from all fault in bringing on the difficulty. 1 Mayfield's Dig. p. 807, subd. 8; 5 Mayfield's Dig. p. 863, subds. 2, 3. The defendant's own testimony, and this without conflict or dispute, clearly shows that he was not free from all fault in bringing on the fatal difficulty. He says that he knew that to approach the deceased under existing circumstances meant a difficulty, and yet he approached the deceased, within four or five feet, and, "looking him in the face," the deceased saying nothing, he (the defendant) said, to use his own language, "Mr. Thompson, let's settle this trouble," and immediately the deceased began to draw his pistol; but he (the defendant) got his pistol out first and fired the fatal shot. It cannot in reason be said from this evidence that the defendant, in the language of the decisions of this court, was entirely free from fault. It is our judgment, on the undisputed evidence, that the defendant could not invoke the doctrine of self-defense. This view of the case disposes of many of the exceptions reserved on the rulings of the trial court on the admission of evidence.

That part of the oral charge of the court excepted to was free from error.

The law is firmly settled in this state that under the plea of self-defense the burden of proof is on the defendant, and therefore charges numbered 1 and 2, requested by the defendant, were properly refused. Charge numbered 3, requested by the defendant, was purely argumentative, and for that reason, if no other, properly refused.

The several written charges, given at the request of the state, correctly stated the law, and in the giving of them there was no error.

The portions of the opinions of *Mitchell v. State*, 60 Ala. 26, and *Ex parte Nettles*, 58 Ala. 268, read by coun-

sel for the state in argument to the jury, was in no sense inflammatory, and not without the scope of legitimate argument. It was not the assertion of any fact, but simply an argument based on hypothetical statement. The fact that the language was that of an eminent judge made it none the less legitimate as a part of the argument by counsel for the state.

We find no error in the record, and the judgment appealed from will be affirmed.

Affirmed.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.