# Lett *v.* The State.

## *Murder.*

(Decided June 15, 1911. 56 South. 5.)

1. *Homicide; Self Defense.*—Where defendant and deceased were on unfriendly terms and deceased went to defendant's house armed with a rifle, and requested the defendant to come to the gate, the defendant could arm himself for his defense, in case of an attack, without robbing himself of the right of self defense.

2. *Same; Instructions; Degree of Homicide.*—It is the duty of the court to instruct on all the degrees of homicide which the jury under the evidence could find for, and it is error to omit to charge upon manslaughter in the first degree, where, under the evidence the jury was authorized to find for that degree.

3. *Charge of Court; Weight and Credibility of Evidence.*—It is the province of the jury alone to pass upon the credibility of the witness and the weight to be given his evidence.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

Largus Lett was convicted of murder in the second degree and appeals. Reversed and remanded.

J. M. HOLLY, FRANK W. LULL, and H. R. GOLSON, for appellant. The court erred in declining to instruct the jury as to manslaughter in the first degree.—*Compton v. The State,* 110 Ala. 35; 109 Ala. 70. The evidence authorizes the jury to find for that degree.—58 Ala. 406; 78 Ala. 436; 46 Ala. 703; 65 Ala. 446; 73 Ala. 57; 139 Ala. 80.

ROBERT C. BRICKELL, Attorney General, for the State. Questions not answered are without error if erroneous. —*Roberts v. The State,* 68 Ala. 515; *Billingsley v. The State,* 85 Ala. 323. Objections should be seasonably interposed.—Authorities supra, and *Tutwiler C. C. & I. Co. v. Mitchell,* 146 Ala. 364. The court did not err in refusing to charge on manslaughter in the 1st degree. *DeArman v. The State,* 71 Ala. 351; *Pierson v. The State,* 99 Ala. 148; *Dennis v. The State,* 112 Ala. 64; *Ragland v. The State,* 124 Ala. 24. One situated as the defendant cannot invoke self-defense.—*Brown v. The State,* 83 Ala. 33; *Lewis v. The State,* 88 Ala. 11.

DE GRAFFENRIED, J.—The defendant was indicted for murder in the second degree, and was tried and convicted of murder in the second degree, and was sentenced to the penitentiary for 10 years.

The evidence, without dispute, shows that the defendant and the deceased, Bob Norrell, both white men, were neighbors, and were on unfriendly terms; that the deceased, shortly before the homicide, had received information that defendant had made some improper remarks about deceased's wife, or some other female member of his family; that on the day of the homicide deceased asked Ed Williams and J. D. Wood, both friends of his, one of them being in his employ, to accompany him to the home of the defendant, and they agreed to do so; that the three walked from the home of the deceased to the home of the defendant, and that on the way to defendant's home, the deceased armed himself with a Winchester rifle and a pistol, and that, the deceased being thus armed with the pistol in his pocket and the rifle on his shoulder, the three parties reached defendant's gate, which was about 10 steps from defendant's house; that the house faced west and contained three rooms and a hall, one room on one side of the hall, and the other two on the other side; that when they reached defendant's gate he was standing in the rear of the hallway, by his water bucket, and that one of the parties said, as they reached the gate, "Hello, Large," and the defendant replied, "Hello, Bob"; that the deceased then asked the defendant to come out to the gate, that he wanted to see him a minute; that defendant picked up his gun and walked in the direction of the deceased. From this point on the evidence, on all material matters, except the fact that defendant shot the deceased, is in dispute.

The evidence for the state tended to show that defendant shot deceased after he reached the gate and was in two or three feet of deceased, and it further tended to show that the homicide was not in self-defense, but constituted murder in the second degree. The evidence for

[Lett v. The State.]

the defendant, on the contrary, tended to show that the defendant shot the deceased just after he stepped from the house to the ground (there was no front porch), and that the homicide was committed under such circumstances as excused the defendant on the ground of self-defense. The evidence further tended to show that both deceased and defendant had made threats against each other. The evidence on behalf of the state further tended to show that the deceased's manner and words, from the time he reached the gate until he was killed, indicated to the defendant a desire for peace and an amicable adjustment of their differences, but that the manner and words of defendant, from the time deceased reached the gate until the homicide, were those of insult and anger, and that defendant, when at or near the gate, shot deceased without cause or justification. The evidence on the defendant's behalf, on the contrary, tended to show that deceased, before defendant went out of his house at deceased's request, stated that he had come for a pacific purpose, but that, immediately after defendant reached the ground, deceased attempted to shoot defendant, and that defendant shot, without fault on his part, to save his own life. The evidence, without conflict, showed that the guns of deceased and defendant were discharged within a second or two of each other.

Undoubtedly, when the deceased, in view of his relations with defendant, went, with his two friends, to the home of defendant with a Winchester rifle and a pistol and called defendant from his house to the gate, he did an act which was calculated to provoke a difficulty, and if the defendant, and not deceased, had been killed as the result of the visit, the deceased could hardly, under the evidence in this case, have invoked the doctrine of self-defense. It is undoubtedly true, also, that defend-

ant, when he was requested by the deceased to come out
to the gate, had a right to comply with that request,
unless he knew that if he complied with the request de-
ceased would attack him. It is also undoubtedly true
that the defendant, when he went to the gate, had a
right to go armed, provided he did so, not for the pur-
pose of aggression, but for the purposes of defense, if
by chance he should be unlawfully attacked by the de-
ceased with a deadly weapon. It therefore follows that
the mere fact, without more, that defendant went to his
gate at deceased's request, and that he went armed with
a deadly weapon, without more, did not, alone, deprive
defendant of the right to invoke the doctrine of self-
defense. "The law is a reasonable master, and has equal
regard for every human life under its jurisdiction. The
divine law does not require us to love our neighbor bet-
ter than ourselves.—*De Arman v. State,* 71 Ala. 351.

It is our understanding of the law that the jury has
the right to pass upon the credibility of a witness or
the weight to be given his testimony. The jury may
accept a part of the testimony of a witness, if they be-
lieve it to be true, and reject the other part, if they be-
lieve it to be untrue; or they may reject it as a whole,
if they disbelieve all of it. Applying this well-known
doctrine to the evidence in this case, we are unable to
hold that, under the evidence, the defendant was either
guilty of murder in the second degree, or that he was
innnocent. The jury, and the jury alone, had the right
to say how much, if any, of the evidence which was of-
fered on behalf of the state or the defendant they be-
lieved, and they therefore had the right, if they believed
that each witness testified truthfully only in one part of
his testimony and falsely in the other part, to reject, as
untrue, a part of the testimony of each witness who tes-
tified in the case, and to accept the rest of his testimony

as true. Not that the law gives the jury the right, ca-
priciously, to reject the testimony of a witness, or a
part of it, but because they have the right of acceptance
or rejection when they feel that, on just legal grounds,
they are justified in so doing.

The jury, therefore, had the right in the present case,
if, in their judgment, and in their judgment alone, the
just and legal grounds for so doing existed, to have re-
jected that part of the evidence for the state which was
most unfavorable to the defendant, and to have rejected
as untrue the parts of defendant's testimony most favor-
able to himself. This being true, we do not, as above
stated, find any substantial reason for holding that, un-
der all the evidence in this case, the jury could not have
acquitted the defendant of murder in the second degree,
and at the same time not have had sufficient evidence to
convict him of manslaughter in the first degree. "In
trials for murder, it is the duty of the court to instruct
the jury as to all degrees of homicide, unless there is an
entire absence of all proof as to the degrees omitted.—
1 Mayfield's Dig. p. 640.

The case of *Compton v. State*, 110 Ala. 24, 20 South.
119, is similar, in many respects, and practically iden-
tically similar, to the present case on the question under
discussion, and in that cause the Supreme Court held
that the trial court committed reversible error in failing
to charge the jury on the subject of manslaughter in the
first degree.

The cases of *Gafford v. State*, 125 Ala. 1, 28 South.
406, and *Rogers v. State*, 117 Ala. 9, 22 South. 666, an-
nounce principles which are not applicable to the evi-
dence in this case. In each of the above cases, the de-
fendant was out "gunning" for his adversary, and in
each case the motive of the defendant was an alleged
wrong done by the deceased to a female relative. The

facts in each case were held to have constituted murder because there was an entire absence of all proof from which manslaughter could have been inferred by the jury.

We are therefore of the opinion that the court below, under the facts as shown in the record, committed reversible error in failing to charge the jury on the subject of manslaughter in the first degree, as requested in writing by the defendant.

Reversed and remanded.